We'll call the case number 24-12573 Malak Khatabi v. Car Auto Holdings, LLC. Good morning, your honors, and thank you for hearing argument in our case. My name is Andrew Cavill on behalf of Ms. Khatabi. We ask this court to restore the original final judgment. I believe that the case line of Pate, Dresden Bank, Valentine, and Ruiz controls this case, punctuated, of course, by the holding in the jurisdictional order of the GRIPA case. GRIPA says pretty convincingly, I believe, that a termination is a frap for disposition, and I believe that resolves the entirety of the case. Conceitedly, when... Do you want to talk about this, or do you want to talk about something else? Whatever your honors would like to say. Well, you started there, so I want to ask about it. So let's assume I agree with you. Just assume that for the moment. The district court also made clear that he was exercising his authority, or it was exercising its authority under Rule 60. And under Rule 60, one can vacate a judgment, even if it's final, making it then unfinal, and then entering a new judgment. You agree with that in principle? In principle, and your honors referring to the First Amendment judgment. That's right, exactly. And the district court said he did this here on two bases. One is that there seemed to be some sort of disconnect between the verdict, which indicated that liability with regard to Title VII was only as to the corporation and not as to the individual, and the original judgment, what I'll call the original judgment, which seemed to imply or indicate liability for the Title VII damages to the individual. Secondly, the district court said that to the extent that the judgment indicated that there was liability for the individual under Title VII, that would be legal error under our law, because an individual can't be held liable for Title VII. It's only the underlying company. That seems to implicate 60A and 60B1, and it was done fairly quickly after this whole thing happened, at least within a reasonable time, as I can tell, and I don't think you argue reasonableness of the time. Why is that not a sufficient basis, even if you're right about the termination being a disposition under Rule 4? Well, regarding the reasonableness, and this ties in with, I think, the rest of the response, the timing was not reasonable because the window to take an appeal from the judgment had already expired. Rule 60 isn't triggered to Rule 4 and time to appeal. Rule 60 just says, for some things, including these two, first of all, 60A doesn't have a time limit on it. 60B1 is within one year and a reasonable time. Here, this met all of those things, and I don't understand why, even if you're right on disposition, we just can't see this as exercising clear authority under Rule 60 to vacate the judgment and then enter a new judgment that's corrected. And at that point, that would trigger the time for post-judgment motions, right? Doesn't that solve the jurisdictional problem? I don't think so, because what is happening there is the Rule 60 is being used to create a new opportunity to appeal. If it were done for that purpose, I agree that that cannot be. In other words, a judge in the judgment from the verdict, then it seems to be a perfectly legitimate exercise of Rule 60 authority, which would have the effect of creating a new judgment and a new appellate right. To clarify my understanding, I'm understanding the court to be driving at the correction of the liability portion only and not to be driving at whether, for example, as happened, I believe in this case, the Rule 60 is then used to file post-judgment motions directed to the first amended final judgment, which are verbatim the same post-judgment motions. Whether they are or not, I mean, the district court just picked and choose. I'm only deciding this right now. I'm vacating it and entering a new judgment. At that point, it opens the window for appeal and or the window for post-judgment motions, does it not? Directed to the first amended judgment. Right, and that first amended judgment certainly implicated the caps, which are what we're talking about, right? It did, but those issues had already come up, they had risen and gone. District court doesn't have to decide every, if district court has a menu and says, here are 10 reasons why you could enter post-judgment or post-verdict or post-judgment motions, and district court says, I like potatoes and not French fries and rules on potatoes, that doesn't mean that French fries can't be litigated later when the new judgment comes up, does it? Well, again, I could, I guess we could live with the first amended judgment being in place for purposes of Mr. Rios' liability only.  That, again, Well, I don't think you get to choose that. Once it's done, it's done. The question is whether it was properly done or not. And I just don't think, even if I get past the disposition part, the disposed of language, it seems to me that it doesn't really matter to decide that because this was a proper exercise under Rule 60 for those reasons that the district court laid out, and that then opened the window for new post-judgment motions, including on the caps. Right, but the caps arguments cannot be then raised again when the opportunity to I know, but if the district court never ruled on it and there's a new judgment, I mean, When you vacate a judgment, it is null and void. It does not exist. Well, the, your honor had just, just said that the court never ruled on the caps. Right. It didn't, you agree, it did not rule on the caps in the, when it initially vacated the judgment, right? It only ruled on one basis, that liability had been extended in the original judgment to the individual that was incorrect as a matter of fact and law. And under Rule 60, that needed to be corrected. It was corrected and a new judgment was entered. There was no ruling on the remitter issue in the first, in the first, when the district court ruled on the first instance. What the district court said is, there's now a new judgment within the time limits given. You can now file post-judgment motions. The response to that is that the ruling on the caps and all of the entirety of the post-judgment motions occurred in the termination order. When, when those post-judgment motions were terminated, that's the ruling. And as Ruiz instructs, the disposition under FRAP 4 does not need to be on the merits. Right. Right. I'm not saying, it could be disposed of but not ruled on. That's what that means. It, it's, it's being, it's being disposed. Right, but not ruled on. Well, I, I disagree that the... You just said it can be done without the, without the merits, without prejudice. I don't equate, I, the termination, I believe, is a ruling. It's not a ruling on the, on the merits of the motion. Right, it's not a ruling on the merits. But that's not required. I agree. It's not. But that doesn't mean that when this thing, when a new judgment comes back, the district court can then rule on the merits. I disagree because that is, because when the termination occurs, then the timeline to take an appeal from that judgment begins. When that deadline expires without an appeal, then it's final. The Rule 60 can't be used to, to substitute for a plenary appeal. And that's the, one of the main problems here, is that the, the, the use of the post-judgment motions directed at the first amended final judgment is being used as a substitute for the plenary appeal. I'm going to give you a little more time to discuss the merits of your argument, and specifically I want to ask you, if we disagree with you that CARA ought to waive the application of the statutory cap for failing to raise it as an affirmative defense, can you explain why it hasn't met its burden of proof with respect to the number of employees given the trial testimony? Yes. The, so to, to clarify my understanding of your Honor's question, if the court disagrees that it's an affirmative defense? Yes. Okay. And I'm not saying we do, I'm just saying, if we do. Presuming that, the burden, the burden can still be on the defendant despite the caps not being an affirmative defense. The... That's why I asked you... Right. ...why has the defendant not met its burden? Right. So, the First Circuit in the Hernandez-Miranda case indicates that the burden is on the defendant despite not resolving whether it's an affirmative defense or not. That's an example of the burden being on the defendant without the affirmative defense or avoidance, as underlies your Honor's question. So, again, if we were further presuming that the defendant does have the burden, first of all, to raise the issue, the defendant has the burden of moving and has the burden of going forward with indicating to the court what evidence there is to support. Okay. Again, we argue that the evidence has to be presented at trial, has to be presented to the jury, and the jury needs to make the resolution. So, for that reason alone, the defendant didn't meet its burden. I'm just asking you a question about the evidence that's in the record. And driving just to the evidentiary point then, one of the issues in the case was whether the dealership had fully paid Ms. Katabi for the work that she did at the beginning of her employment with the dealership when she was training. The dealership's argument at that point was that they argued that Katabi and everyone else there was not an employee. We argued, and won, on the issue of all of those people being employees. So, the jury seems to have rejected Mr. Rios' position and the dealership's position based on Mr. Rios' testimony. Furthermore... The jury thought they all were employees, right? Because that's why they gave them money as an employee. I mean, the jury implicitly found they all were employees. I'll only say it found that Ms. Katabi was. It's implied that the others were, too. I think our question goes to this testimony. There's only two pieces of evidence in the trial about the number of employees. And Carlos Rios testified, and I think what we're asking is why is this not enough to carry their burden. And Rios testified Carl Oto had 20 or 22 employees at the time of the trial in April 2022, although I don't think that's the time we look at. We look at the time the discrimination occurred, which was consistent with how many employees Carl Oto had in the time around September 2020, give or take two or three people. So, why would that not be enough to show that they fell within the 14 to whatever hundred, I don't know what the range is. Now I understand more clearly. I think that's what, why is that not, that's probably the most the defendant has. Yes. And why is that not enough to carry the burden? I understand more clearly now what you're driving at. And the other side can tell us if they've got more than those two pieces of evidence on the number of employees. But I, for sake of argument, it's not an affirmative sentence one way, but they had the burden to show that the cap applied. So necessarily that gives them the burden to show the number of employees. So that's kind of the simplistic way of saying it. So for at least two reasons, when we look to the test in the caps portion of the statute, the test is number one, it has to fall within a bracket by showing the number of employees in 20 weeks or more. It says in each of 20 or more. Correct. In each of 20 weeks or more of the calendar year. In the current or preceding year. The whole thing's vague. What is the current or preceding year? We know from cases such as Vance in the Fifth Circuit that that means the year of discrimination. And the preceding calendar year. So 20 weeks, Mr. Rios only addressed a point in time of September for instance. No, but he says we have it in April 2022 and it was the same thing back in September 22. Inferentially, it's been the same thing from September 2020 to April 22. That's their argument and I'm asking you to respond to it. He has a beginning and an end and so that is sufficient. Well, I will disagree that it has an implication that it's from the beginning of the period marked by his testimony to the end of the period. Because he's referring to two distinct points in time. He doesn't testify that from April of that year, of the previous year, through September of the year of the discrimination. He doesn't say that. He refers to two discrete points in time. And so he hasn't, they haven't met the 20 weeks. Obviously he says that. So it's inferentially. Is there any evidence to contradict it was the inference? There's a reasonable inference there that it's through the whole time. And in fact, if you look at the trial, you kind of have everybody at trial testifying how many people were there. It seems consistent with everything else in the trial. I mean, are you realistically going to be able to go back and show they got over 100 employees? I mean, really? We're not sure, Your Honor, because we were denied the opportunity for discovery. As I indicated below and in our briefs, we would have pursued discovery on the issue of the integrated enterprise theory. But you also agree the jury couldn't have decided this, even if they raised it at trial without a bifurcation. You'd have to have it bifurcated because the law is clear. You can't let the jury know what the caps are. Is that correct? Well, not exactly, Your Honor. I believe it's C-2 of the statute. It mentions that the jury cannot be informed of the limitations. Right. I understand, but that kind of means they can't know the limitations. So you're saying you could have asked them to make a finding how many employees there were. Correct. And in fact, the jury does that, well, something similar in a normal case where the plaintiff needs to show 15 or more employees as an element of the statute, as an element of her claim, rather. And the, sorry, I've lost my train of thought, but the... The jury can't be informed of the limitations, so we're back on whether there was enough evidence. And your position is there clearly wasn't enough evidence to carry that burden as to the full 20, each of the 20 weeks in the current or preceding year. That's where you were, so you've answered it for me. You've answered the question. So you can go back to whatever you want to now. All right. Well, again, I believe that the case is controlled by the termination issue. I think that my opponent has a hard time getting out of GRPA at a minimum. Conceitedly, the lower court didn't have the benefit of the GRPA jurisdictional order, but what's important is that we were arguing that the termination qualifies as a Rule 4 disposition all along and the important thing is that the jurisdictional panel in GRPA independently came to basically the same conclusion. We understand your argument on that. Thank you. Good morning, Your Honors. Chelsea Sharon for the EEOC as amicus. I'd like to just begin with the questions with respect to the defendant's burden and whether it was carried here even assuming that the caps are not an affirmative defense. And I would just point out that the issues are intertwined. I know that your question presumed that the caps were not an affirmative defense, but the prejudice here is illustrated by the fact that had Ms. Katabi understood that the defendant was seeking to avail itself of a lower cap, they would have better countered the evidence that was put into the record concerning burden. So, for example, Knapp Shoes and Jacobson cases talk about how the plaintiff didn't know to cross-examine on the issue because they didn't understand that that was the issue that was in the process of being tried. And that Rios' testimony here was coming in in the context of the FLSA claim wasn't necessarily coming in specifically for the issue of the caps and the plaintiff could have developed the integrated enterprise theory and had better evidence to counter the small fragment of testimony that was in the evidence had they understood that the defendant was intending to avail itself of a lower cap. What's the best argument you have based on our case law from our circuit that this is an affirmative defense at least with regard to the cap from 15 to, what is it, 50 or 100 employees? Your Honor, there is very little case law specifically on the Section 1981A caps. I will point out... Certainly with regard to that, but I meant analogizing to similar... Absolutely. What would be the best argument you have? Absolutely. So this court's case law, for example, in the Hassan case we cite in the N. Ray Ross and Food Services case speak to the question of whether the issue is extraneous to liability or does it negate an element of the plaintiff's claim. And is it your position that damages are not an element of a Title VII plaintiff's claim? Yes, that's correct, Your Honor. I don't think there should be any dispute that a plaintiff doesn't have to prove damages as an element of their claim. Of course, they have to show entitlement to damages to be able to recover damages, but that's distinct. And even the way the statute is set up, the caps are extraneous to that. The jury is left to decide substantive entitlement and amount without reference to the caps, and then the caps come in after as a defensive shield to sort of deprive that ordinary entitlement of its use. Let me ask you about waiver, because it seems to me that you can't waive law. You may be able to waive facts and defenses, but you really can't waive law. And it seems to me that at least as a matter of law, and I'm just talking about Title VII here, not the Florida part, on Title VII, one cannot recover more in some, meaning the addition of compensatory impunitive damages, over 300, under any circumstances, correct? That's what the law says, yes. Okay. That can't be waived, can it? I think it can, Your Honor. Tell me the best, again, looking at our law. Yes. Tell me the best that you have that that is something that can be waived, that a court can do something, this is a congressionally created remedy with a congressionally created limit on that remedy, that a court can then grant, even as authority or jurisdiction, to grant more remedy than is authorized by Congress. I would point out that there are multiple mandatory preconditions or thresholds in Title VII that themselves that have been found to be waivable or something like that. Those are, again, like pre-suit notices and conditions are very different than, like, the outside, we're talking about remedy. So, like, Congress has, out of thin air, created a cause of action. And it has, out of thin air, established a box for what remedies for that cause of action exist. What authority do you have that a court, a federal court, can give something beyond or outside of that box? I don't think that's meaningfully different, though, than Congress saying, here's a cause of action in Title VII. And that cause of action does not apply at all to entities with more than 15, I mean, fewer, I'm sorry, fewer than 15 employees. Let me, let me, let's assume I'm not convinced by that. Is there any, do you have any other sort of analogy you can draw where we have authorized that, despite waiver or not bring up an affirmative defense, that a federal court is allowed to give remedy beyond the outside of the box created by Congress for a congressionally created cause of action? I don't have a case specifically about remedy. I might, I would analogize to the other preconditions or thresholds that are built into Title VII. And I would point out, obviously, that that, as your Honor, I think the premise of your question identifies that that would only relate to the maximum cap. Okay. So that, that's where I want to go. Because it seems to me that, that the lower caps are not just fact, are not just law-based, but instead have an embedded factual. Absolutely. That has to be there. Is there a Seventh Amendment or jury right component, whether it's statutory or constitutional, with regard to whether there's a fact component for the amount of damages? We did not take a position on that, your Honor, on the question about the jury. I'm asking you what your view is. You're, you're the EOC. I know. I'm not authorized to take a position on things that weren't in the brief, so I apologize that I can't take a position on that. But I would point out that the fact-dependent nature of that inquiry obviously gives rise to the possibility of prejudice if the plaintiff is not aware that the defendant is invoking the lower cap. And— You agree with me, though, that Title VII, there is a right to a jury trial for Title VII, that is embedded within Title VII. And that was invoked here in this case. Yes, your Honor. Okay. Thank you. Thank you. If the Court has no further questions, we would urge you to reverse the, the grant of remittance right here. Thank you. Good morning, your Honor. This is Roy Watson, representing the appellee for a change. Here, the defendant did not waive our argument that the $50,000 cap on non-economic damages under Title VII are applicable because we did not have the burden of pleading that as an avoidance, and I'll explain why. And none of the cases cited by the appellate or the, or the amicus established that there is such a burden. Most important thing is, car auto holdings is not under Title VII unless it's an employer. It's not an employer unless it has more than 15 employees. So it is an element of the plaintiff's cause of action to demonstrate the numerosity of employees. In, in one of the cases cited by the EEOC, maybe by both the Ingram case, um, citing a, a federal procedural treatise for determining what, uh, when something is an, a defense versus when it's an element, is, quote, whether the matter at issue fairly may be said to constitute a necessary or extrinsic element in the plaintiff's cause of action. And here, under Title VII, the numerosity of employees is an element, necessary element, in the plaintiff's cause of action. Only as to the minimum, though, you would agree, Mr. Wasson. In other words, you, what a, what, what has to be shown is that it's over or under 15. And after that, there's Title VII liability, and there's no, no more burden on anybody, at least under that element, to bring up, uh, to prove the number of employees or the threshold or a level, right? Right, but, but I think, I think in, in doing, in doing that, there's, it's, to me, it's implicit that the, the plaintiff is not going to be just, just doing it at, at a number of, of that. If once they have the burden of showing that, that there are more than 15 employees, it's, it's an element of the cause of action, the numerosity. And I, you know, a lot of the cases that, that are, that have been cited, um, refer to the, the possibility of prejudice to the plaintiff by not knowing something is going to be, um, litigated. And, and one of the cases, um, yeah, that, that, that Ingram case that, that I was talking about, that was a case in which they cite, um, a malpractice case brought under the Federal Tort Claim Act, okay? Um, the, the caps were not under the Federal Tort Claim Act or the state common law of malpractice that was there. The damage cap was a separate Texas state law capping damages in medical malpractice case. And the court noted that the first mention of a caps there was three months after the judgment was entered. And the defendant was unfairly surprised because they did not know that that statute was going to be an issue in the case. Here, the plaintiff knew that the statute which contained the caps was, was involved. So they were not surprised by being blindsided by. Certainly the, the, the grading of the caps, the entire scheme is part of Title VII. So I your point. But where a company falls is not inherent in a cause of action. In other words, I think the, the, what, the questions that we're trying to ask with your, uh, learned counsel on the other side was that the maximum surely is the outer limit. And that has to be a play always, it seems to me. But beyond that, that isn't necessarily a play. It just is in the statute. And if someone doesn't invoke that, how is a party to know that they have to, that is an issue, they have to take discovery on it, evidence of it presented to it there to get a jury finding on this, which I think is exactly as Judge Holt said, this is the way this procedure has to be, that there has to be a jury finding a number of employees to then trigger the cap. I just say, they know that that statute is in play. And for them to just think that a part of the statute is in play and the rest of the statute they can ignore because the defendant did not lead the rest of the statute, I don't think is a reasonable interpretation, Your Honor. Yeah, but that's true of every statute. I mean, it's not like the Texas statute just came out of nowhere. It was always on the books as it was an FTCA case, which implies implicates state law. So it's not like no one can open up the reporters or the statute book and know it. I just, I'm not sure I understand. I mean, there's lots of statutes. I have the federal code in my office. It takes up an entire bookshelf in the library. You know, there's 42 or 48 different volumes just on the federal side. And then you add in the state. It's hard to say that you have to know, and that triggers an obligation to be able to know that the caps are at issue, such that you have to prove things and get a jury finding on it without someone saying it, right? No, Judge, but it's, you don't have to go to 40 books. The statute with the caps is the one that they're suing on. They ought to know what that whole statute provides. If I could just stay with some of these other cases, they argue that the Shettick case says you can waive this caps issue. There, the applicability of the caps wasn't waived by the defense due to failure to plead it. There, the statute was expressly repudiated. The dissent at the oral argument, the opinion says the dissent asserts that the sheriff should be limited to $50,000 in non-economic damages. Midwest has not pursued this argument, either in the district court or on appeal. And they go on to say, they ask at oral argument, how did you not raise 42 USC section 1981A-B-3? Got lost in the shuffle. And counsel for the Midwest said that was a statute we don't claim applies here. So that's not authority for the proposition that the failure to plead it is a waiver. The two northern district of Alabama cases cited by the appellant also do not involve a question of whether the cap was waived by having not been pled. The district court stated, quote, in the order on the motion in limine, the court granted the request that sublime be prohibited from introducing of it. Let's assume for the moment that it isn't an avoidance or affirmative defense under 8C. Let's assume for the moment that it's not an avoidance or affirmative defense under 8C. At some point, though, isn't someone, for the reasons that Judge Holt described earlier, that the way this has to be litigated is there'll be some evidence on both sides, and then there'll be a jury interrogatory stating how many employees under this threshold are over. And then based on that, the court will assess, because the statute says the jury is not to be told about the caps. How is a judge or the party supposed to know that this is an issue if, for example, no one raises it under the Rule 16 pretrial disclosure? Well, as I said in the brief, I went down through the Rule 16 elements, what has to be in the pretrial disclosure. And I don't believe that's in there. Well, I did the same. And even if that's the case, the local rules also implicate, the local rule comes under Rule 16. And the local rule specifically requires that all facts at issue or all facts that need to be decided are to be disclosed so that the court is able to know and to understand what's at issue in the case, right? I mean, this is not, at some point, you have to put somebody on notice that this is an issue, right? Someone's got to. But the defense, I mean, the plaintiff here, the appellant, never asked for a jury instruction or a verdict question on number of employees. So they didn't ask for it. I've cited a page in the record where the charge conference was. And the defendant didn't either. The defendant didn't ask for an instruction. The defendant didn't ask for a jury instruction. Nobody did. Neither side. Neither side. And if you have the burden, wouldn't you be the one that had to do that? Doesn't that matter who's got the burden? Let's assume it's not an affirmative defense. You can raise it. Wouldn't you still, and let's assume you have the burden. Let's assume that. You went on, it's not an affirmative defense, but as to the evidence of the number of employees, you have the burden. So what then happens here? Well, I'd still say that the fact that we had the burden would be weighed by neither side asking for a finding on the jury verdict. If they go to the charge conference and the plaintiff sees that there's no blank on the jury form for asking for the number of employees, are they going to sit back and say, well, that means we get the biggest number of employees? You know, the jury verdict form here was really amazing. It didn't separate the defendants correctly. It didn't even say Title VII versus Florida law. The jury verdict form here was an absolute mess. Okay. It just said, was there sex discrimination in both defendants? Was there this or that done punitive? I mean, the whole verdict form here, no wonder he had to amend the judgment because it was a mess. So how could you possibly, let's assume for sake of argument, are you over or under? I don't want you to go over. Okay, you're under. So I want to give you an opportunity to answer the question that it's not an affirmative defense. You have the burden. It's a jury finding. Just assume all that. Okay. How did your evidence satisfy your burden since the law requires that you show the range in each of the 20 consecutive months during the current or preceding year? How did you satisfy that burden? Let me narrow it further. All I could find is two little places that I read where Mr. Rios testified. Is there anything else? Only by implication, and I'll explain what. But to begin with, on the places that you found in the transcript where the question was asked, I would say that that constitutes a trial of the issue by implied consent because if the issue was not pleaded, what the number of employees was, there would be no relevance to my co-counsel's question. And he asked him how many employees his car auto holdings have. And so the lack of an objection to that is trying the issue of the number of employees. And if we had the burden of pleading it, well, the burden was discharged by the evidence being introduced, the question being asked without objection. It's not relevant to anything else. Okay, I'll accept that, but I continuously from September 22, whatever the date was in 2022, it just said, well, we had 22 employees in September 20. And we had this, no, actually said we had 20 to 22 in April 22. And we had the same thing in September 2020. And he makes an argument. All that does is give you two points in time, but doesn't tell you what you had in each of the 20 weeks during the current or preceding year. So I don't know, I don't know how you carried your burden. And for sake of argument, then you didn't. So you get the 300,000 cap, but that would be the only logical outcome. Only but only by the implication of there, there was a lot of testimony about what was going on in this dealership over a long period of time. There was a lot of testimony about, about who, what employees they had, what they didn't have, they didn't have a HR department, so forth. And there was never any, any hint of a precipitous drop from 100 employees or more to the 20 or 22. You say under the totality of the evidence, that testimony and everything else, there's no way anybody could have found they had more than 20, 22 employees during the period at issue. That's what she would say. I think the next limit is 100. There was certainly no evidence that, from which it could, could be reasonably surmised that they went from 101 down to 2022. It's just, it's just the whole, the whole picture of the whole dealership and everything. There would have been some hint that it remarkably changed over the period of time, and there was none. I'll move, I'll move quickly to, to this, this other argument that, that wasn't raised, but about the, the, the allocation of the, of the, the damages to the, the state and the federal claim that was argued in the brief. The, the appellant didn't argue that, sir. I'm sorry? The, the appellant hasn't made, hasn't argued that here. All right. I'll, I'll not make the argument then, and I'll, if there are no further questions, I'd ask that the court affirm after this, this has been a long protracted proceeding, it's time to put the case to rest. Thank you, counsel. Rebuttal. First, I want to point out that Bradshaw indicates that it was correct not to apportion damages between the Florida and the federal statutes, that the, they run parallel and  Well, I didn't, I didn't let him argue that, so you can't respond to it either. I was responding to your honors last point, but okay. I, I think that there can be no way that the caps would be an element of the plaintiff's claim. That's so for a number of reasons. One is that discrimination suits have been permitted since, I think, about 1986, and damages and discrimination, sexual discrimination suits since, I think, 1991 or so, and we don't have a case saying from a court of appeals or the Supreme Court listing that as one of the elements of a, of a plaintiff's claim. That's number one. Number two, the number of employees is an element though. That's his response to you here. But yeah, but that's, that's Arbaugh, and Arbaugh, it's non-jurisdictional, it's an element of the claim, the 15 or more, but in Arbaugh, the Supreme Court indicated that where that element is, is not contested prior to trial, I believe, that it's considered established. Right, but we're talking about the pleading, what the requirements of the pleading stage is for denials and, or whether it needs to be an affirmative defense, and if it's an element, the number of employees, the test, and I think he stated it correctly, is generally if, if something is an avoidance or affirmative defense, if it is something other than the goes to something other than the elements of the case for which a general denial will be sufficient. Well, but this is something extra. This is, this is new evidentiary proofs required that are extrinsic to the plaintiff's claim. The plaintiff can prove 15 or more or have a stipulation as in this case, and then to prove additional, or to prove one of the higher level of the, of the caps, the defendant would have to inject new evidence, different evidence about the number of employees that it had, not just 15 or more, but particular ranges. So that's new extrinsic evidence indicative of an affirmative defense. In other words, the defendant could, as in this case, basically admit that there's 15 or more, and yet new evidence would be required to prove one or more of the ranges of the caps, right? So that indicates it's, it's an affirmative defense or avoidance, it's the defendant's burden. We also see that in the, the structure and language of the, the statute. In, in 1981-A-B-1, we're talking about the determination of punitive damages. It specifically refers to the complaining party, and the complaining party must demonstrate, for example, malice to show the, the, the punitive damages. But then we go down to B-3 with the limitations, and it does not refer to the, to the complaining party proving anything. It does not, it's, it's all cast in the passive voice. See that my, my time is up. We would ask that the court restore the, the original judgment, and, and give full meaning to the jury's verdict. Thank you. Thank you. The court will be in recess for 10 minutes before we hear the last argument.